## ALLEN–MORROW CO. v. LIQUID CAR-BONIC CO.

No. 1354—5492.

Commission of Appeals of Texas, Section A. April 30, 1930.

Barney A. Garrett and Weatherby & Rogers, all of Waco, for plaintiffs in error.

Peyton A. Ellison, William I. Gamewell, and George C. Cochran, all of Dallas, for defendant in error.

SHARP, J.

P. C. Allen and C. B. Morrow, Jr., copartners, doing business under the trade name of Allen-Morrow Company, instituted this suit in the district court of McLennan county, against the Liquid Carbonic Company of Texas, and, among other things, alleged substantially that plaintiffs entered into a verbal rental contract with defendants for a building located in Waco, which building was formerly occupied by the Yancey Drug Store, and for which the defendants agreed to pay the sum of $125 per month, which was a reasonable rental value of said building; that under the contract defendants used the building from December 28, 1927, up to and including the ——— day of May, 1928; that the defendants used the building for the purpose of keeping stored therein a certain soda fountain, fixtures, etc. In the alternative, plaintiffs alleged that if they should be mistaken with reference to the contract aforesaid that plaintiffs alleged they stored, for account of defendants during said time, the soda fountain and fixtures and that defendant promised and agreed to pay plaintiffs for storing said soda fountain, etc., in the building above described, the sum of $125 per month and that the defendants owe plaintiffs for four months storage thereof at the rate of $125 per month; that the soda fountain and fixtures remained in the building for four months, after which time plaintiffs had same removed and stored upon the account of Liquid Carbonic Company; that plaintiffs were in the automobile storage business and were renting said building temporarily until they were compelled to use the building for their own business.

The defendants answered with a general demurrer, special exceptions, general denial, etc., and further sought by way of cross-action to recover of and from the plaintiffs the possession of the soda fountain property which was held by them. A trial was had before the court without a jury, and the court rendered a judgment in favor of plaintiffs for $220 with a foreclosure of their lien upon the soda fountain and fixtures.

The plaintiffs filed a remittitur of $20 on the amount of the judgment and the lien foreclosed by the trial court upon the soda fountain and fixtures. The Liquid Carbonic Company appealed the case to the Court of Civil Appeals for the Tenth Supreme Judicial District and that court held that the plaintiffs in the trial court were not entitled to recover either rental or storage from the defendants, and reversed and rendered the judgment in favor of the defendants. 15 S.W.(2d) 1089. Allen-Morrow Company applied to the Supreme Court for writ of error, which was granted.

The trial court, at the request of the defendants, filed findings of fact and conclusions of law. Those parts of the court's findings of fact and conclusions of law material to a disposition of this case are copied herein and set out as follows:

"Allen-Morrow Company, plaintiff, is a firm composed of P. C. Allen and C. B. Morrow, Jr., who are the owners of a building located at 110 Washington Street, in the City of Waco, Texas. Prior to the 26th day of November 1927, Allen-Morrow Company leased the premises to Yancey Drug Store, a corporation, at a rental of $100.00 per month, and upon that date, it was duly adjudged a bankrupt by the United States District Court, for the Western District of Texas, at Waco; that prior to the filing of its schedules in bankruptcy, the Yancey Drug Store had

purchased from The Liquid Carbonic Company of Texas, the following described property: (Here follows a description of the soda fountain, fixtures, etc.)

"And as a part of the purchase price for said property it executed to The Liquid Carbonic Company two notes, payable in installments, dated October 21st, 1926, and at the time the Yancey Drug Store filed its schedules in bankruptcy, it was indebted to The Liquid Carbonic Company of Texas by reason of said transaction in the sum of approximately $1300.00, which was secured by a valid and subsisting mortgage upon the property above described.

"At the first meeting of creditors in the bankruptcy proceedings of the Yancey Drug Store, Tom Conway was duly appointed Trustee of said bankrupt corporation, and an order was made by the Referee in Bankruptcy, directing the Trustee to sell the property, of the Yancey Drug Store, including the above described property, free of liens, and said sale was duly advertised to be had in the building at 110 Washington Street, on the 28th day of December 1927, that at the sale, The Liquid Carbonic Company of Texas was represented by George I. McGee, who was duly authorized to do each and every act in behalf of said company, as hereinafter set forth; that prior to the time of the sale, The Liquid Carbonic Company has presented to T. F. Bryan, Referee, in Bankruptcy, a claim which, by reason of certain defects he returned to it for correction, but that the Trustee agreed with McGee at the time of the sale that the claim would be duly prepared and filed with the Referee.

"Tom Conway was the duly qualified and acting Trustee of the Yancey Drug Store, and was acting under legal orders of the Referee at the time of making the sale, and the sale was duly advertised to be made on the 28th day of December 1927, at public outcry to the highest and best bidder; that the said George I. McGee bid the sum of $1200.00 to be credited upon the secured claim of the Liquid Carbonic Company of Texas for the above described property, and further agreed to pay its proportionate part of the court costs incident to the sale, and this being the highest and best bid for said property, it was accepted by the Trustee, with the understanding that The Liquid Carbonic Company of Texas would deposit with him its proportionate part of the cost incident to making the sale, at which time the property was to be transferred to it by proper bill of sale; that the Trustee estimated its part of said cost to be the sum of $170.00 and so notified The Liquid Carbonic Company of Texas.

"At the time of making said sale, the Trustee in Bankruptcy notified Mr. McGee, as well as the other purchasers of the property for sale, that the estate had no funds with which to take care of the rents on the building after the 28th day of December 1927, and that if the properties remained in the building that they would have to make arrangements with the owner of it for such charges as would accrue after that date, to which Mr. McGee, representing The Liquid Carbonic Company of Texas, assented; that immediately thereafter, Mr. McGee and Mr. Allen and Mr. Morrow had the following agreement: That if the property was removed from the building within one week, there would be no charges, but that if it remained there longer than that time, The Liquid Carbonic Company of Texas, would pay the rental at the same rate as had been paid by the Yancey Drug Store. On the 29th day of December a representative of The Liquid Carbonic Company of Texas made demand upon Allen-Morrow Company for the property hereinabove described, but at that time they had not complied with their agreement with the Trustee to deposit with him their pro rata part of the costs incident to the sale, nor had the Trustee transferred the property to it, and acting under the instructions of the Trustee, possession of the property was refused it by the Allen-Morrow Company."

Upon the request of the defendants the trial court made additional findings of fact, as follows:

"I further find that at the time of the Trustee's sale of the soda fountain and fixtures on December 28th A. D. 1927, that the Trustee in bankruptcy, Tom Conway, and The Liquid Carbonic Company of Texas, acting by and through its duly authorized agent, Mr. McGee, agreed as part of the consideration for the sale that The Liquid Carbonic Company of Texas would, in addition to the Twelve Hundred and no/100 ($1200.00) Dollars to be credited on its secured claim, pay its pro rata part of the bankruptcy expense, the exact amount of which was not determined and in addition thereto, The Liquid Carbonic Company of Texas would pay the rental on said building in which the property was located until same was removed after December 28th 1927, the exact amount of cost to be paid by the Liquid Carbonic Company was not determined at that time.

"I further find that the plaintiffs were present at the sale and heard the conversation by and between Tom Conway, Trustee, and George I. McGee, and understood that The Liquid Carbonic Company of Texas would pay the rental on said building after December 28th, 1927 until the soda fountain and fixtures in controversy were removed therefrom, and at the time the plaintiffs made the agreement with The Liquid Carbonic Company of Texas, acting by and through George I. McGee, that the payment of its pro rata part of the bankrupt costs and expense by the Liquid Carbonic Company of

Texas, was a condition precedent to the delivery to The Liquid Carbonic Company of Texas of the possession of the soda fountain and fixtures.

"It ·was further understood by the plaintiffs that The Liquid Carbonic Company of Texas was purchasing the property in controversy from the Trustee, and it was necessary for The Liquid Carbonic Company of Texas to have a Bill of Sale from the Trustee, and that they should pay the rental on the building in which said property was located before it was entitled to possession of said soda fountain and fixtures. * * *

"I further find that the rental value of the building in which the soda fountain and fixtures were located was, since December 28th 1927, One Hundred and no/100 ($100.00) Dollars per month, and that the plaintiffs could have rented said building during all of said time since January 1st 1928 for the sum of One Hundred and no/100 ($100.00) Dollars per month, on two occasions prior to Feb. 28th 1928 plaintiffs were offered $90.00 per month for the rental of the building but was unable to rent the building for the reason the soda fountain and other property claimed by the defendant was located therein; that since May 1st 1928, at which time the soda fountain and fixtures were removed from said building, the plaintiffs have rented the building for One Hundred and no/100 ($100.00) Dollars per month.

"I further find that the purchasers of the property other than the property in controversy at the Trustee's sale on December 28th, 1927 immediately removed said property from the building, and that after said date, until May 1st 1928, the soda fountain and fixtures were the only property located in said building; that at the time the agreement was made by and between the plaintiffs and George I. McGee for the use of the building, it was understood and agreed by and between the plaintiffs and the defendant that the defendant would have to comply with its bid and secure a Bill of Sale from the Trustee, and comply with other formalities before it would be entitled to possession of the property, and that it might take longer than one week to comply with its bid; that it was intended and agreed that The Liquid Carbonic Company of Texas would pay the rental on the building for the time said building was used by The Liquid Carbonic Company of Texas, and that The Liquid Carbonic Company of Texas exclusively used the building for the purpose of keeping its soda fountain and fixtures therein and had possession and control of said building after January 1st 1928 until February 28th 1928; that since on or about January 30th 1928, The Liquid Carbonic Company of Texas has had title and possession and control of the soda fountain and fixtures involved in this suit and exhibited same for sale to prospective purchasers while located in said building, except the plaintiffs refused to permit the property to be removed from said building until they were paid the rental; that said building was rented from Allen-Morrow Company by The Liquid Carbonic Company of Texas from month to month until The Liquid Carbonic Company of Texas should remove its soda fountain and fixtures from said building; that said building was used during the months of January and February by The Liquid Carbonic Company of Texas for the purpose of keeping therein the soda fountain and fixtures in controversy and exhibiting same for sale to prospective purchasers; that after February 28th 1928 said building was used for storage purposes only."

## Conclusions of Law.

"I conclude, as a matter of law, that The Liquid Carbonic Company of Texas is indebted to P. C. Allen and C. B. Morrow, Jr., in the sum of Two Hundred Twenty and no/100 ($220.00) Dollars, with six (6%) per cent interest from May 1, 1928, secured by a lien on the aforesaid described property, and that subject to said lien and said debt, the Liquid Carbonic Company of Texas has title of the aforesaid property."

As already shown, the plaintiffs in the trial court entered a remittitur of $20 upon the amount of the judgment as well as their lien against the soda fountain, fixtures, etc.

Allen-Morrow Company earnestly contend that in view of the testimony adduced upon the trial of this case in the lower court and upon the findings of the trial court with reference to the issues involved in this suit, the Court of Civil Appeals erred in reversing and rendering this case for the Liquid Carbonic Company. While the testimony in some respects is sharply conflicting, yet, in view of the findings of fact made by the trial court and the evidence adduced upon the trial, we are of the opinion that the Court of Civil Appeals erred in reversing and rendering this case. We think that the testimony tends to show that the trustee in bankruptcy had no money to pay the rent or storage after the bankruptcy sale on December 28, 1927, and the trustee so notified all purchasers and requested them to comply with their bids and immediately remove the property purchased by each of them or make arrangements with the plaintiffs, who were the owners of the building, to take care of the property belonging to the bankrupt and that the Liquid Carbonic Company agreed thereto and that all purchasers removed their property from the building, except the Liquid Carbonic Company, and that same was stored in the building and remained there for some months, and that the Liquid Carbonic Company agreed to pay for the storage thereof, and that the find-

ings of the trial court upon the essential facts are sustained.

In view of this record, we think that the plaintiffs are entitled to recover from the defendants according to their agreement and contract made at the time the soda fountain was sold by the trustee in bankruptcy. We are further of the opinion that the facts adduced in this case justify the trial court in so holding that a contract or agreement had been entered into by and between Allen-Morrow Company and the Liquid Carbonic Company for the purpose of storing the soda fountain in the building for a certain time, and that the rental or storage charges therefor was reasonable.

Corpus Juris defines contracts proper as express or implied and that the only difference between the two classes of contracts is in the character of proof required to establish them. The one class is proved by direct, the other by indirect, evidence. The former arise from the oral or written language of the parties. In the latter the intention of the parties is not expressed in language.

"A contract implied in fact, or an implied contract in the proper sense, arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract." C. J. p. 241, § 8.

"Contracts implied in law, or more properly quasi or constructive contracts, are a class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu. They rest solely on a legal fiction, and are not contract obligations at all in the true sense, for there is no agreement; but they are clothed with the semblance of contract for the purpose of the remedy, and the obligation arises not from consent, as in the case of true contracts, but from the law or natural equity. So, when the party to be bound is under a legal obligation to perform the duty from which his promise is inferred, the law may infer a promise even as against his intention." C. J. p. 244, § 10.

It follows from the foregoing that we think the Court of Civil Appeals erred in holding, in effect, that as a matter of law there was no evidence to sustain the judgment of the trial court, and in reversing and rendering this case.

We therefore recommend that the judgment of the Court of Civil Appeals reversing and rendering this case be reversed, and that the judgment of the trial court be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals reversed, and that of the trial court affirmed, as recommended by the Commission of Appeals.