The **CITY OF GREENVILLE,**
**Texas, Appellant,**

v.

**V.C. EMERSON, W.A. Caplinger, et
al., Appellees.**

No. 05–86–00823–CV.

Court of Appeals of Texas,
Dallas.

Sept. 11, 1987.

Hal K. Gillespie, Dallas, for appellees.

Mick McKamie, Greenville, for appellant.

Before HOWELL, STEWART and THOMAS, JJ.

THOMAS, Justice.

This is a breach of contract case. The City of Greenville appeals from a judgment rendered in favor of appellees, who are eleven retired City of Greenville firemen. In seven points of error, Greenville argues: (1) there was no evidence to support the trial court's finding that the parties had entered into a contract; (2) all claims were barred by the statute of limitations; (3) Greenville's method of calculating employee benefits is not subject to judicial review; (4) Greenville's method of calculating employee benefits was correct as a matter of law; (5) the trial court erred in awarding sick leave benefits, since such benefits had already been paid in accordance with law; (6) the trial court erred in awarding attorney's fees because Greenville was engaged in a governmental action; and (7) the trial court committed reversible error in admitting certain evidentiary exhibits. Because we agree with Greenville's first point of error, we reverse and render judgment that appellees take nothing by this suit.

In order to fully understand this case a detailed recitation of the facts is necessary. City of Greenville firemen work a twenty-four-hour tour of duty followed by two days off. Over a six-week period this averages out to a fifty-six-hour workweek. The firemen are salaried employees and are paid bi-weekly. Even though the firemen work an average of fifty-six hours a week, until October 1, 1984, their pay periods were computed as one hundred twenty hours per pay period, or sixty hours per week. Because the firemen are on salary, their pay is unaffected by the number of hours used to compute each pay period; but since the salary is set, the per hour rate is lower on a sixty-hour week than on a fifty-six hour week. Longevity pay, certification pay, and sick pay upon retirement is based on a formula using the firemen's per hour wage rate. Consequently, the lump-sum benefits paid upon retirement are lower when the benefits are calculated on a sixty-hour work week than on a fifty-six-hour work week.

In the spring of 1984, a group of recent retirees of the department became cognizant that Greenville was still using a sixty-hour week in calculating the firemen's per hour wage. Aware that they averaged a fifty-six-hour week, they became concerned that they did not receive all of the retirement benefits due them. Therefore, they contacted Troy Hill, a fireman for the City of Greenville, and expressed their concerns. Hill, in turn, contacted Claude Jenkins, the Greenville Fire Chief.

On April 4, 1984, Jenkins wrote a memo to Barry Robinson, Greenville's Personnel Director, inquiring about the city's policy of computing firemen's hours at one-hundred-twenty hours per pay period. Jenkins also asked why firemen do not receive longevity pay for those sick-leave days the firemen are paid for upon retirement. On April 24, 1984, Robinson wrote a memo to Ken White, the City Manager, recommending that beginning October 1, 1984, Greenville begin calculating a fireman's pay based upon a fifty-six-hour work-week. He also recommended that Greenville begin to include longevity and certification pay in the ninety days of sick leave paid upon termination. On April 27, 1984, Robinson issued a memo to Jenkins stating that effective October 1, 1984, Greenville would convert a fireman's pay scale to a fifty-six hour week and also would begin to include longevity pay in the amount of sick leave pay paid upon termination.

On May 11, 1984, Jenkins wrote a memo to Hill informing him of the changes that were to occur October 1, 1984. In the memo, he said that the retired employees who did not receive the benefit of these new practices could contact the personnel office. On July 17, 1984, Robinson issued another memo to Jenkins informing him that any employee wishing to file a claim for the monies that he would have received, had his retirement benefits been calculated under this new method, should file a claim. However, the memo expressly stated that no guarantee of payment of any claim was being given. Lastly, on October 9, 1984, Robinson wrote yet another memo to Jenkins saying that claims could only be filed

between October 1, 1984 and October 31, 1984. The appellees all filed timely claims. Greenville paid some additional longevity pay to most, but not all, of the appellees. Greenville refused to pay additional certification or sick leave pay. This suit followed.

The trial court in its findings of fact and conclusions of law found, inter alia, that the series of memos detailed above constituted a contract. The court concluded that such contract was breached by Greenville and awarded damages and attorney's fees to the firemen. The parties stipulated as to the amount of damages and attorneys' fees if the firemen's theory of the case was found to be correct.

Greenville contends that there is no evidence to support the trial court's finding that the series of memos constituted a valid contract between Greenville and the firemen. In determining a no evidence point the appellate court must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 593 (Tex.1986); *Garza v. Alviar,* 395 S.W. 2d 821, 823 (Tex.1965); *David McDavid Pontiac, Inc. v. Nix,* 681 S.W.2d 831, 835–36 (Tex.App.—Dallas 1984, writ ref'd n.r. e.).

We first note that, since there was already a valid express contract covering the subject matter in question, there can be no implied contract. *Black Lake Pipe Line Co. v. Union Construction Co.,* 538 S.W.2d 80, 86 (Tex.1976); *Woodard v. Southwest States, Inc.,* 384 S.W.2d 674, 675 (Tex.1964); *Morales v. Dalworth Oil Company Inc.,* 698 S.W.2d 772, 774 (Tex. App.—Ft. Worth 1985, writ ref'd n.r.e.).

We now examine these memos to determine if they constitute an express contract to pay appellees additional benefits under Greenville's new method of calculating retirement benefits.

The case of *Haws and Garrett General Contractors, Inc. v. Gorbett Brothers Welding Co.,* 480 S.W.2d 607, 609 (Tex. 1972) contains an excellent discussion of the distinction between an express and im-

plied contract. In *Haws and Garrett Contract, Inc.,* the Court stated:

It is said that the distinction between an express contract and one implied in fact is that the former arises when the contractual terms are stated by the parties; and that the latter arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract. 13 Tex.Jur.2d Contracts § 4 (1960); 17 Am.Jur.2d Contracts § 3 (1964); 17 C.J.S. Contracts § 4 (1963). Professor Corbin in his treatise points out, however, that contractual duty is imposed by reason of a promissory expression; and that as to this, all contracts are express contracts, the difference being in the modes of expressing assent. So he concludes that the distinction between an express and an implied contract is of little importance, if it can be said to exist at all; and that the matter that is of importance is the degree of effectiveness of the expression used. Further, that a promise implied in fact is merely a tacit promise, one that is inferred in whole or in part of the promissor; and that it is a question of fact whether or not in a particular case a promise should be so inferred. 1A. Corbin, Contracts §§ 17, 18 (1963).

Our courts have recognized that the real difference between express contracts and those implied in fact is in the character and manner of proof required to establish them. *See Allen–Morrow Co. v. Liquid Carbonic Co.,* 27 S.W.2d 132 (Tex.Com.App.1930, jdmt. adopted); *First Pasadena State Bank v. Marquette,* 425 S.W.2d 450 (Tex.Civ.App. 1968, writ ref'd n.r.e.); *Miller v. Miller,* 292 S.W. 917 (Tex.Civ.App.1927, writ ref'd). In each instance there must be shown the element of mutual agreement which, in the case of an implied contract, is inferred from the circumstances. *Marr–Piper Co. v. Bullis,* 1 S.W.2d 572 (Tex.Com.App.1928, judgmt. adopted); *Turners, Inc. v. Klaus,* 341 S.W.2d 182, (Tex.Civ.App.1960, writ ref'd n.r.e.). The conception is that of a meeting of the

minds of the parties as implied from and evidenced by their conduct and course of dealing, *Duncan Coffee Co. v. Chiles*, 136 S.W.2d 929 (Tex.Civ.App.1940, no writ), the essence of which is consent to be bound, *Stone Co. Inc. v. Carminati*, 317 S.W.2d 78 (Tex.Civ.App.1958, no writ).

■ The first memos are inquiries between city employees as to what method of calculating those benefits should be used. It is then decided that as of October 1, 1984, a new method should be used. The last memos say that any retired fireman who did not have his benefits calculated this way could contact the personnel office between October 1, 1984 and October 31, 1984 and file a claim. But it is expressly stated in one memo that Greenville was in no way guaranteeing payment of any claim. In none of these memos did Greenville expressly promise that these retired firemen would be paid the monies they are now claiming. Indeed, Greenville expressly disclaimed any guarantee that their claims would be paid. We have carefully examined the documents that appellees rely upon and conclude that they do not constitute a contract between the City of Greenville and appellees. *Cf. Smitham v. City of Wichita Falls*, 93 S.W.2d 791, 791–92 (Tex.Civ.App.—Ft. Worth 1936, no writ).

■ Further, except where, and to the extent that, power to contract on behalf of the municipality is vested by charter or statute in other departments or officers, the power to make municipal contracts resides in the city council. 63 C.J.S. *Municipal Corporations* § 981 (1950). The fixing of compensation and benefits of city employees has specifically been held to be the dominion of the city council. *Taxpayers Ass'n of Harris County v. City of Houston*, 100 S.W.2d 1066, 1070 (Tex.Civ.App.— Galveston 1936), *aff'd*, 129 Tex. 627, 105 S.W.2d 655 (1937). The city council never approved, ratified, or authorized the fire chief or personnel manager to enter into such a "contract." Even assuming arguendo that a contract existed, neither the fire chief nor the personnel manager had authority to enter into such a contract, and thus the contract would not be binding on the city. *City of Fort Worth v. First Baptist Church of Fort Worth*, 268 S.W. 1016, 1020–1022 (Tex.Civ.App.—Ft. Worth 1924, no writ); *Indiana Road Mach. Co. v. City of Sulphur Springs*, 63 S.W. 908, 908–09 (Tex.Civ.App.1901, no writ).

■ Lastly, again assuming that a contract existed, it would be in violation of article three, section fifty-three of the Texas constitution, which provides:

§ 53. County or municipal authorities; extra compensation; unauthorized claims

Sec. 53. The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part; nor pay, nor authorize the payment of, any claim created against any county or municipality of the State, under any agreement or contract, made without authority of law.

Tex.Const. art. III, § 53. The "contract" sought to be enforced by appellees would require the City to pay additional sums of money for services already rendered and benefits already paid. In effect, it would constitute Greenville entering into a second contract with appellees to pay them additional benefits above what they received under a prior valid existing contract for no additional consideration. Such a contract would contravene article three, section fifty-three of the Constitution. *See Rhoads Drilling Co. v. Allred*, 123 Tex. 229, 241, 70 S.W.2d 576, 582 (1934).

For the reasons stated above, the judgment of the trial court is reversed and judgment is hereby rendered that appellees take nothing by this suit. Since we have reversed on appellant's first point of error, we need not consider the remaining points.

REVERSED and RENDERED.