OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



October 24, 2000

The Honorable Delma Rios
Kleberg County Attorney
700 East Kleberg
P.O. Box 1411
Kingsville, Texas 78364

Opinion No. JC-0297

Re: Whether a county is authorized to pay one half of the health premiums of county retirees and their dependents for an indefinite period of time and related questions (RQ-0244-JC)

Dear Ms. Rios:

You ask whether a county that does not include retirees in its group health plan is authorized to pay one half of the health premiums of county retirees and their dependents for an indefinite period of time. You also ask whether the continuing health coverage requirements of the Federal Consolidated Omnibus Budget Reconciliation Act of 1985, or COBRA,[1] apply to county employees and, if so, whether a county may extend health benefits to retirees and their dependents past the time limits set forth in COBRA.

We conclude that COBRA does not require or authorize a county to pay any portion of a retiree's health insurance premiums or to make health insurance coverage available beyond that statute's mandatory time periods for continued coverage and that a county may not agree to pay half of county retirees' health insurance premiums unless the retirement plan is authorized by state law and the agreement is consistent with article III, section 53 of the Texas Constitution. Article III, section 53 precludes a county from agreeing to pay half of a county retiree's health insurance premiums if that payment would constitute unbargained-for, retroactive compensation.

You provide the following background information: There are presently ten retired employees of your county who have continued their health insurance coverage with the county, either for themselves or their eligible dependents, by paying their monthly premiums. This year, due to an increase in coverage, the premiums increased in cost. The retirees have asked the county to

---

[1]Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat. 82 (1986) (continued health coverage provisions codified at 29 U.S.C. §§ 1161-69 and 42 U.S.C. §§ 300bb-1 to 300bb-8 (1994 & Supp. IV 1998)).

pay half of the premiums for them and their dependents for an indefinite period.[2] We understand that the county offers a group health plan to its employees but does not offer the plan to its retirees. Retirees of the county continue their health insurance coverage by paying for their premiums under COBRA, but the county allows them to continue to pay for coverage past the COBRA time limits, until they qualify for Medicare.[3]

First, you ask whether a county is authorized to pay one half of the health premiums of county retirees and their dependents by state law. You indicate that article 3.51-2 of the Insurance Code authorizes the county to do so. That provision expressly authorizes a county to procure contracts insuring its officials, employees, and retirees and their dependents under a group health policy. *See* TEX. INS. CODE ANN. art. 3.51-2(a) (Vernon Supp. 2000). In addition, a county may pay all or any portion of the premiums on group health insurance coverage for officials, employees, retirees, and their dependents. *Id.* art. 3.51-2(b). Finally, a county may establish a fund to provide health and other insurance to its officials, employees, their dependents, and retirees. *Id.* art. 3.51-2(c). The provisions of article 3.51-2 contemplate that a county will officially include retirees in its group health plan. We gather, however, that your county has not included retirees within its group health plan or established a health and insurance fund that covers retirees. Therefore, the article 3.51-2 provisions authorizing a county to provide group health insurance to retirees permit your county to provide health insurance benefits to persons who retire from the county in the future, but do not govern the relationship between the county and its existing retirees, who are not included in the county's group health plan.

Other statutes authorize counties to provide health insurance to retirees, but do not appear to apply here. Section 157.002 of the Local Government Code authorizes a commissioners court to provide various kinds of insurance to retirees, but it must do so by rule and the rule must be included in the person's employment contract. *See* TEX. LOC. GOV'T CODE ANN. § 157.002 (Vernon 1999). Based on the information you have provided, it does not appear that a right to section 157.002 insurance upon retirement is included in your county's employment contracts. Chapter 175 of the Local Government Code, which provides a person who retires from a county with a population of 75,000 or more with a right to purchase continued health benefits coverage, *see id.* §§ 175.001, .002, does not apply to your county due to its population, which is less than 75,000.[4]

Significantly, this office has long construed article 3.51-2 of the Insurance Code and other statutes granting counties express powers to provide health insurance to be the exclusive means by which counties may provide health insurance and to foreclose counties from providing health insurance to employees, retirees, or their dependents by other means:

---

[2]Letter from the Honorable Delma Rios, Kleberg County Attorney, to Honorable John Cornyn, Texas Attorney General at 1 (June 6, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

[3]Telephone Conversation with Honorable Delma Rios, Kleberg County Attorney (Aug. 29, 2000).

[4]1 BUREAU OF THE CENSUS, U.S. DEP'T OF COMMERCE, 1990 CENSUS OF POPULATION: General Characteristics: Texas 3 (1992) (Kleberg County population: 30,274).

A county commissioners court has only the powers conferred either expressly or by necessary implication by the constitution and statutes of this state. See Tex. Const. art. V, § 18; Canales v. Laughlin, 214 S.W.2d 451, 453 (Tex. 1948). The limited authority granted to local political subdivisions under article 3.51-2 of the Insurance Code does not encompass your particular arrangement; such authority must be found elsewhere.

Tex. Att'y Gen. Op. No. JM-406 (1985) at 1; *see also* Tex. Att'y Gen. Op. Nos. MW-473 (1982) (concluding that county could establish a self-insurance fund under former article 2372h to insure employees, but not their dependents, because statute did not expressly permit inclusion of dependents); H-535 (1975) (construing prior version of Insurance Code article 3.51-2, which did not expressly authorize a county to provide health insurance to retirees, to prohibit county from including retirees within its group insurance plan, even if retirees paid their own premiums). In other words, the authority to provide health insurance to employees, retirees or their dependents must be based on express statutory authority and may not be implied.

In sum, with respect to state law, we are not aware of any statute that governs the relationship between your county and its existing retirees with respect to health insurance coverage. Because the authority of a county to provide health insurance must be expressly granted by statute, the current arrangement between your county and its retirees appears to be beyond the county's authority, unless it is mandated by federal law.

Next, we address your questions about federal law: whether COBRA's continuing health coverage requirements apply to county employees and, if so, whether a county may extend health benefits to retirees and their dependents past the time limits set forth in COBRA. We conclude that although COBRA generally applies to county employees and requires covered county group plans to offer continuing coverage to retirees for a certain period of time, COBRA does not require or authorize a county to pay any part of a county retiree's health insurance premiums, nor does it require or authorize a county to offer coverage for an indefinite period of time.

Congress passed the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") in April 1986.[5] In essence, COBRA's provisions regarding continuation of health coverage enable employees who leave their jobs to retain, for 18-36 months after their departure, the same health coverage they enjoyed while working. COBRA's provisions mandating that group health plans provide continuation coverage benefits were placed in both the Public Health Services Act ("PHSA") and the Employee Retirement Income Security Act ("ERISA"). *See* 42 U.S.C. §§ 300bb-1 to 300bb-8 (1994 & Supp. IV 1998) (PHSA); 29 U.S.C. §§ 1161-69 (1994 & Supp. IV 1998) (ERISA). COBRA amended both ERISA and the PHSA by adding essentially identical continuation coverage and notification provisions. ERISA, however, exempts any "government plan" from its employee benefit plan provisions. *See* 29 U.S.C. § 1003(b)(1) (1994 & Supp. IV 1998). COBRA's

---

[5]*See supra* note 1.

amendments to the PHSA fill this gap by providing similar protection to beneficiaries losing coverage under a plan maintained by "any State that receives funds under this chapter, by any political subdivision of such a State, or by any agency or instrumentality of such a State or political subdivision." 42 U.S.C. § 300bb-1(a) (1994). These amendments do not apply to "any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year." *Id.* § 300bb-1(b)(1).

The continuing coverage requirements of the PHSA are triggered by a "qualifying event," which is defined to mean

> with respect to any covered employee, any of the following events which, but for the continuation coverage required under this subchapter, would result in the loss of coverage of a qualified beneficiary:
>
> (1) The death of the covered employee.
>
> (2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.
>
> (3) The divorce or legal separation of the covered employee from the employee's spouse.
>
> (4) The covered employee becoming entitled to benefits under title XVIII of the Social Security Act [42 U.S.C.A. § 1395 et seq. ("Medicare")].
>
> (5) A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.

*Id.* § 300bb-3. We note, however, that the PSHA provisions do not require the employer to pay any part of the continuation coverage. Rather, the employee may be required to pay a premium that "shall not exceed 102 percent of the applicable premium for such period." *Id.* § 300bb-2 (1994 & Supp. IV 1998).

In answer to your question about COBRA's application, COBRA applies to employees of your county if your county provides a group health plan and the plan does not fall within the statutory exemption for small employers. However, COBRA does not require or authorize a county to pay any portion of an employee's health care premiums. *See id.*

You also ask whether the county has the authority to extend health benefits to retirees and/or their dependents past the time limits established in COBRA. Request Letter, *supra* note 2, at 1. COBRA does not require a county or a county's plan to extend coverage beyond the mandatory

periods for coverage, *see id.* § 300bb-2(2) (period of coverage "must extend *for at least* the period beginning on the date of the qualifying event and ending not earlier than the earliest of") (emphasis added), and therefore does not authorize a county to make coverage available for an indefinite period of time. Whether a county has the authority to extend health benefits past the limits established in COBRA is not governed by COBRA but rather by state law. Again, we are not aware of any statute, other than COBRA, that governs the relationship between your county and its retirees with respect to health insurance coverage. Although the arrangement between your county and its retirees appears to be informal and not governed by any state law, we note that the Texas Department of Insurance interprets articles 20A.09(k) and 3.51-6(1)(d)(3) of the Texas Insurance Code to require an insurer to offer coverage for an additional six months beyond COBRA coverage.[6] However, neither provision appears to require or authorize coverage beyond the six month extension.

Finally, based on the information you have provided, we believe that your county must consider whether it is precluded from agreeing to pay part of the retirees' health insurance premiums by article III, section 53 of the Texas Constitution, which prohibits a county from granting "any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part." TEX. CONST. art. III, § 53. A contract to pay retirees additional benefits for no additional consideration contravenes this provision. In *City of Greenville v. Emerson*, 740 S.W.2d 10, 13 (Tex. App.–Dallas 1987, no writ), for example, the court held that the city's alleged agreement to apply a new method of calculating retirement benefits to retirees and to pay them the amount they would have received had the method been applied when they retired would violate article III, section 53, because it would require the city to pay additional sums of money for services already rendered and benefits already paid: "In effect, it would constitute Greenville entering into a second contract with appellees to pay them additional benefits above what they received under a prior valid existing contract for no additional consideration." *Id.* Payment of increased retirement benefits does not run afoul of article III, section 53, however, if, at the time of retirement, the statute governing the employee's retirement plan expressly provided for the possibility of additional payments. In that case, such extra payments will not constitute "unbargained for, retroactive compensation" prohibited by article III, section 53. *See* Tex. Att'y Gen. Op. No. DM-265 (1993) at 3; Tex. Att'y Gen. LO-97-113, at 4.

Here, no statute other than COBRA governs the retirees' arrangement with the county. Instead, the arrangement whereby retirees maintain health insurance coverage by paying their own premiums past the COBRA deadlines appears to be entirely informal. Moreover, it does not appear that the county ever agreed to pay any portion of the retirees' premiums. Unless the county agreed to pay a portion of the retirees' health premiums as part of their compensation for services rendered to the county, article III, section 53 precludes the county from now agreeing to pay half their premiums.

---

[6]*See* Letter from Lynda H. Nesenholtz, General Counsel, Texas Department of Insurance, to Opinion Committee, Office of Attorney General (Aug. 3, 2000) (on file with Opinion Committee).

In sum, COBRA does not require or authorize a county to pay any portion of a retiree's health insurance premiums or to make health insurance coverage available beyond that statute's mandatory time periods for continued coverage. A county may not agree to pay half of county retirees' health insurance premiums unless the retirement plan is authorized by state law and is consistent with article III, section 53 of the Texas Constitution.

## S U M M A R Y

The Federal Consolidated Omnibus Budget Reconciliation Act of 1985 does not require or authorize a county to pay any portion of a retiree's health insurance premiums or to make health insurance coverage available beyond that statute's mandatory time periods for continued coverage. A county may not agree to pay half of county retirees' health insurance premiums unless the retirement plan is authorized by state law and is consistent with article III, section 53 of the Texas Constitution. A county may not agree to pay half of a county retiree's health insurance premiums if that payment would constitute unbargained-for, retroactive compensation.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee