OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

JOHN CORNYN

May 23, 2001

The Honorable Jack M. Skeen, Jr.
Smith County Criminal District Attorney
100 North Broadway, 400
Tyler, Texas 75702

Opinion No. JC-0383

Re: Whether, without violating article III, section 53 of the Texas Constitution, a county may pay group-health-insurance premiums for retirees for whom, at the time they retired, the county did not provide such benefits, and related questions (RQ-0334-JC)

Dear Mr. Skeen:

Under article III, section 53 of the Texas Constitution, a retired county employee generally may not receive a new or increased benefit from the county if the county did not provide it when the employee retired. *See* TEX. CONST. art. III, § 53; Tex. Att'y Gen. Op. No. JC-0297 (2000) at 4. Since October 1, 1996, Smith County (the "county") has paid group-health-insurance premiums for its retired employees, including nine (the "nine retirees") who retired when the county provided that a retiree could continue to participate, at the retiree's own expense, in the county's health-insurance plan for a period consistent with federal law.[1] *See* Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat. 82 (1986) (continued health-insurance coverage provisions are codified at 29 U.S.C. §§ 1161-69 and 42 U.S.C. §§ 300bb-1 to -8 (1994 & Supp. IV 1998)) [hereinafter COBRA]. We assume that the nine retirees have provided no additional consideration in return for the county's payment of health-insurance premiums. You ask whether, under article III, section 53 of the Texas Constitution, the county may pay the nine retirees' health-insurance premiums. *See* Request Letter, *supra* note 1, at 2; TEX. CONST. art. III, § 53. Because the county did not provide for such a benefit when the nine retired, it may not pay the premiums.

You ask two other related questions. You question whether the county must ask the nine retirees to reimburse the county for the premiums it has paid since October 1, 1996. *See* Request Letter, *supra* note 1, at 3. The county may, but it need not. You ask last whether the county may invite the nine retirees to participate in the county's group-health-insurance policy if the retirees pay their own premiums. *See id.* We conclude that those who retired between January 1, 1994 and October 1, 1996 may be entitled to participate in accordance with chapter 175 of the Local

---

[1]*See* Letter from Honorable Jack M. Skeen, Jr., Smith County Criminal District Attorney, to Honorable John Cornyn, Texas Attorney General (Dec. 28, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

Government Code. *See* TEX. LOC. GOV'T CODE ANN. ch. 175 (Vernon 1999). Those who retired before January 1, 1994 may not participate beyond the period required by COBRA, however.

You provide these facts:

> On September 9, 1996, the Smith County Commissioners Court approved a policy to provide group health insurance coverage for future retirees and to pay 100% of the premiums for these retirees. The effective date of this policy was October 1, 1996. Prior to October 1, 1996, Smith County retirees were offered continued . . . coverage [under COBRA] at their own expense. As of October 1, 1996, there were nine . . . county retirees on COBRA paying their own premiums. The Commissioners Court opted to include these 9 retirees in the new policy. Thus, the county included these 9 retired individuals in its group health policy and began paying the insurance premiums for these 9 retirees beginning October 1, 1996. The county has continued paying 100% of these premiums to [the] present.

Request Letter, *supra* note 1, at 1-2. You further stipulate that, "[a]t the time these 9 individuals retired, the [county] policies governing their retirement plan did not provide for the possibility of the county including them in [the] group plan or paying any portion of their health insurance premiums. Rather, [when] these 9 persons retired, the policy of the county was that retirees would pay 100% of their premiums for continued COBRA coverage." *Id.* at 3. The dates of retirement for the nine range from August 1992 through July 1996. Telephone Conversation with Lee Porter, Smith County Assistant District Attorney (Mar. 12, 2001).

Under article III, section 53 of the Texas Constitution, a county generally may not increase a former employee's retirement benefits beyond those for which the county provided at the time of retirement. Article III, section 53 expressly prohibits the legislature from authorizing a county to grant "any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after [a] service has been rendered, . . . , and performed in whole or in part." TEX. CONST. art. III, § 53.

Increasing retirement benefits is constitutionally permissible in two circumstances. First, a county may increase a retiree's benefits if the retiree provides additional consideration. *See City of Greenville v. Emerson*, 740 S.W.2d 10, 13 (Tex. App.–Dallas 1987, no writ) (determining that "contract" that requires city to pay "additional sums of money for services already rendered and benefits already paid . . . for no additional consideration" contravenes article III, section 53); *accord* Tex. Att'y Gen. Op. No. JC-0297 (2000) at 5. Second, a county may increase a retiree's benefits if, at the time of the retiree's retirement, the county's retirement policy or applicable federal or state law "provided for the possibility of additional payments." Tex. Att'y Gen. Op. No. JC-0297 (2000) at 5. For example, the board of trustees of a fire fighters' retirement benefits plan may increase retirement benefits for current retirees without violating article III, section 53 because the applicable

statute explicitly permitted the board to change retirement benefits for those already receiving monthly retirement benefits. *See* Tex. Att'y Gen. LO-97-113, at 4.

Neither circumstance appears present here. First, we assume that, to this point, the nine retirees have provided no additional consideration for the county's payment of health-insurance premiums. Nothing in the information you have provided suggests that they have done so. *See generally* Request Letter, *supra* note 1. Second, at the time of the nine retirees' retirements, nothing in the county policy or in applicable federal or state law provided for a possibility of increased health-insurance benefits. At that time, county policy required retirees to pay 100% of their health-insurance premiums for continued coverage under COBRA. *See* Request Letter, *supra* note 1, at 3. Under COBRA, a retiree may continue, for eighteen to thirty-six months after the date of retirement, health-insurance coverage through the former employer. *See* 29 U.S.C. §§ 1161 - 1163; 42 U.S.C. §§ 300bb-1 through -3. But COBRA "does not require or authorize a county to pay any part of a county retiree's health insurance premiums." Tex. Att'y Gen. Op. No. JC-0297 (2000) at 3. Similarly, no state law that requires or authorizes the county to pay the nine retirees' health-insurance premiums provided for increased benefits. Article 3.51-2 of the Insurance Code, which authorizes a county to procure group-health-insurance contracts covering retired county employees and to pay all or any portion of the premiums for retirees, *see* TEX. INS. CODE ANN. art. 3.51-2(a), (b) (Vernon Supp. 2000); Tex. Att'y Gen. Op. No. JC-0297 (2000) at 2, does not authorize a county to pay group-health-insurance premiums for a retiree if the payments constitute unconstitutional retroactive compensation. *See* Tex. Att'y Gen. Op. No. JC-0297 (2000) at 2. Section 157.002 of the Local Government Code "authorizes a commissioners court to provide various kinds of insurance to retirees," *id.*, but the insurance must be provided "by rule" and "included in the person's employment contract." TEX. LOC. GOV'T CODE ANN. § 157.002 (Vernon 1999). Because you specify that the county did not provide for premium-paid health insurance for the nine retirees at the time they retired, *see* Request Letter, *supra* note 1, at 3, section 157.002 does not apply. Last, although chapter 175 of the Local Government Code, which entitles a person who is employed by a county with a population of 75,000 or more to, upon retirement, continue participating in the county's health-insurance program at the retiree's expense, appears to apply to the county, it does not authorize the county to pay retirees' health-insurance premiums. *See* TEX. LOC. GOV'T CODE ANN. §§ 175.001, .002(a) (Vernon 1999); 1 Bureau of the Census, U.S. Dep't of Commerce, 1990 Census of Population, General Population Characteristics: Texas 4 (1992) (Smith County population is 151,309) (174,706 according to 2000 census, *available at* http://www.census.gov/); *see infra* at 4-5 (discussing further chapter 175). *But see* TEX. LOC. GOV'T CODE ANN. §§ 175.006, .007 (Vernon 1999) (listing matters chapter 175 does not affect and exempting certain counties and municipalities from chapter 175).

We therefore conclude that the county may not pay health-insurance premiums for the nine retirees without violating article III, section 53 of the Texas Constitution. We do not understand the nine retirees to have provided any additional consideration for the increased benefit. Additionally, neither county policy, nor federal or state law require or provide for the possibility of the increased benefits.

You ask second whether the county must ask the nine retirees to reimburse the county for premiums the county paid in contravention of article III, section 53 of the Texas Constitution. The county may, but it is not required to do so.

A governmental entity, in the exercise of its discretion, may seek to recover a payment that its agent has erroneously paid to a private party from public funds. *See City of Taylor v. Hodges*, 186 S.W.2d 61, 63 (Tex. 1945); Tex. Att'y Gen. Op. No. JM-910 (1988) at 7. While the county *may* seek reimbursement, we found no case law or attorney general opinion stating that the governmental body *must* seek reimbursement. *See United States v. Paddock*, 178 F.2d 394, 398-99 (5th Cir. 1949), *cert. denied*, 370 U.S. 813 (1950) (discussing rule as articulated by several federal and state courts); *Hodges*, 186 S.W.2d at 63; *Cameron County v. Fox*, 2 S.W.2d 433, 436 (Tex. Comm'n App. 1928, judgm't adopted) (stating that amount wrongly paid "may be recovered in an action by the county"); *Gould v. City of El Paso*, 440 S.W.2d 696, 699 (Tex. Civ. App.–El Paso 1969, writ ref'd n.r.e.) (noting exception to general rule "where payment was mistakenly made out of the public treasury"); *Nunn-Warren Publ'g Co. v. Hutchinson County*, 45 S.W.2d 651, 653 (Tex. Civ. App.–Amarillo 1932, writ ref'd) ("Although the payment to the defendant was made by the county voluntarily, such payment was without lawful authority, and the action of the auditor, the commissioners[] court, and the county in said transaction was illegal and void and the amount paid to and received by the defendant is recoverable in this action.") (citing *Fox*, 2 S.W.2d 433); Tex. Att'y Gen. Op. Nos. JM-910 (1988) at 7, MW-93 (1979) at 2. Thus, a county may exercise reasonable discretion as to whether to seek reimbursement in a particular case. *See* Tex. Att'y Gen. Op. No. JM-910 (1988) at 7. In making its decision, the county commissioners court might consider, for instance, "the amount of funds to be reimbursed, the ease of collection, and the legal and other costs incident to collection." *Id.* (citing Tex. Att'y Gen. Op. No. MW-93 (1979) at 3). The county also should weigh the notion that the commissioners court may have authorized unconstitutional payments from funds belonging to the public. *See Hodges*, 186 S.W.2d at 63; *Paddock*, 178 F.2d at 398-99 (quoting *City of Taylor v. Hodges*).

We address your remaining question: whether the county constitutionally may "continue to include these 9 retirees under [the county's] group insurance policy if the retirees pay all of the premiums?" Request Letter, *supra* note 1, at 3. The answer to this question is complicated by the fact that some of the nine retirees retired before chapter 175 of the Local Government Code became effective, on January 1, 1994. Telephone Conversation with Lee Porter, Smith County Assistant District Attorney (Mar. 12, 2001); *see also* Act of May 28, 1993, 73d Leg., R.S., ch. 663, § 2(a), 1993 Tex. Gen. Laws 2460, 2462 (stating effective date of what is now chapter 175 to those who retire from county employment "on or after January 1, 1994"). For those who retired on or after January 1, 1994, when chapter 175 became effective, and before October 1, 1996, when the county policy became effective, we apply chapter 175. But the county has no authority to invite those who retired before January 1, 1994 to participate in the program.

We conclude that a person who retired on or after January 1, 1994 but before October 1, 1996 may participate in Smith County's group-health-insurance program at the retiree's expense, but only in accordance with chapter 175 of the Local Government Code. Chapter 175 applies to a person who

"retires from county employment in a county with a population of 75,000 or more" and who "is entitled to receive retirement benefits from a county . . . retirement plan." TEX. LOC. GOV'T CODE ANN. § 175.001 (Vernon 1999). Under section 175.002, a person to whom the chapter applies has a limited right to purchase continued health benefits:

> (a)　　A person to whom this chapter applies is entitled to purchase continued health benefits coverage for the person and the person's dependents as provided by this chapter unless the person is eligible for group health benefits coverage through another employer. The coverage shall be provided under the group health insurance plan or group health coverage plan provided by or through the employing county . . . to its employees.

> (b)　　To receive continued coverage under this chapter, the person must inform the employing county . . . , not later than the day on which the person retires from the county or municipality, that the person elects to continue coverage.

> (c)　　If the person elects to continue coverage for the person and on any subsequent date elects to discontinue such coverage, the person is no longer eligible for coverage under this chapter.

*Id.* § 175.002(a) - (c). A county that is subject to chapter 175 has a duty to inform a retiring employee of his or her right to continued health coverage:

> A county . . . shall provide written notice to a person to whom this chapter may apply of the person's rights under this chapter not later than the date the person retires from the county or municipality. A county . . . may fulfill its requirements under this section by placing the written notice required by this section in a personnel manual or employee handbook that is available to all employees.

*Id.* § 175.005.

Under chapter 175, a person who has retired from county employment since January 1, 1994 is entitled to participate in the county's group-health-insurance coverage if he or she informed the county of his or her election to participate "not later than the day on which the person retire[d] from the county." *Id.* § 175.002(b). Of course, the county had a duty to notify the retiring employee of his or her entitlement in accordance with section 175.005. *See id.* § 175.005. We assume that none of the persons who retired between January 1, 1994 and October 1, 1996 is eligible for group health-benefits coverage through another employer. *See id.* § 175.002(a). We also assume that neither of the exemptions listed in section 175.007 apply to Smith County. *See id.* § 175.007 (exempting certain counties that provide health-benefits coverage through self-insured plan or plan authorized

under chapter 172, Local Government Code, and counties that provide coverage "substantially similar to or better than the coverage" chapter 175 requires).

Those who retired before January 1, 1994 may not participate in the county's group-health-insurance program, even at their own expense. As we have stated, the county did not provide for paying these retirees' health-insurance premiums under section 157.002 of the Local Government Code at the time they retired. *See* TEX. LOC. GOV'T CODE ANN. § 157.002(a)(4) (Vernon 1999); *supra* at 3 (determining that section 157.002 does not apply); *see also* Act of May 18, 1989, 71st Leg., R.S., ch. 872, §§ 2, 3, 1989 Tex. Gen. Laws 3862, 3863 (adopting section 157.002(a)(4), Local Government Code, and noting effective date of June 14, 1989). Additionally, chapter 175 was not yet in effect. Consequently, the county had no authority to permit retirees to participate in the county's group-health-insurance program beyond the period required by COBRA. *See* Act of May 28, 1993, 73d Leg., R.S., ch. 663, § 2(a), 1993 Tex. Gen. Laws 2460, 2462 (setting effective date of what is now chapter 175).

## S U M M A R Y

In light of article III, section 53 of the Texas Constitution, a county may not pay group-health-insurance premiums for a retired employee absent additional consideration from the retired employee, if at the time he or she retired, the county did not provide for such coverage nor for the possibility of such coverage. *See* TEX. CONST. art. III, § 53. The county may, but is not required to, seek reimbursement from a retired employee for whom the county paid premiums in violation of article III, section 53. With respect to a person who retired on or after January 1, 1994, that person may be entitled to participate in the county's health-insurance program in accordance with chapter 175. *See* TEX. LOC. GOV'T CODE ANN. ch. 175 (Vernon 1999). But the county may not permit a person who retired from employment with the county before January 1, 1994 to participate beyond the period required by federal law, even if the retiree pays the premiums.

Yours very truly,

JOHN CORNYN
Attorney General of Texas


ANDY TAYLOR
First Assistant Attorney General

SUSAN D. GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General - Opinion Committee